1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CC LIT HOLDING, LLC,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>INFOSYS LIMITED,<br><br>　　　　　Defendant. | Case No.  18-cv-00807-BLF<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re:  ECF Nos. 42, 43] |

This case concerns the business relationship between Plaintiff CC Lit Holding, LLC ("Caiman") and Defendant Infosys Limited ("Infosys").  In 2006, Caiman presented Infosys with an opportunity to work with Cavium, a third party, which was in the process of integrating a company it had just acquired.  Caiman alleges that it disclosed the opportunity to Infosys with the reasonable expectation of receiving a finder's fee for the referral.  After Cavium selected Infosys to assist with the integration, Caiman sought payment of a finder's fee, but Infosys refused.  This suit followed.

Before the Court are the Parties' cross-motions for summary judgment:  Caiman's Motion for Partial Summary Judgment, ECF No. 42 ("PMSJ"); and Infosys's Motion for Summary Judgment or, in the Alternative, Summary Adjudication, ECF No. 43 ("DMSJ").  Each party opposes the other's motion.  *See* ECF Nos. 44 ("PMSJ Opp."), 45 ("DMSJ Opp.").  The Court held a hearing on these motions on October 19, 2021.  For the reasons stated on the record and outlined below, the Court (1) DENIES Caiman's Motion for Partial Summary Judgment, (2) GRANTS Infosys's Motion for Summary Judgment on the oral contract claim, and (3) DENIES Infosys's Motion in all other respects.

United States District Court
Northern District of California

## I.   BACKGROUND

Caiman[1] was a privately owned consulting company primarily located in Seattle and California, cofounded in 2004 by its CEO and Managing Partner Ahmad "Raazi" Imam.  ECF No. 43-1, Exs. 3-4 ("Imam Dep."), at 5:13-14.  In 2016, Cavium approached Caiman to set up an integration management office that would supervise the integration of QLogic, a company that Cavium had recently acquired, into Cavium.  *Id.* at 35:14-25, 88:11-89:3.  Cavium paid Caiman just over $680,000 for managing the integration.  *Id.* at 186:15-20.

Because Caiman itself was not capable of handling every aspect of the integration—such as issues related to any international offices—Caiman offered to introduce Cavium to other companies who could meet those remaining needs.  *See* Imam Dep. at 36:1-18.  When several large consulting companies could not meet Cavium's integration timeline, Caiman sought other smaller integration companies who could jump in immediately.  *See id.* at 38:18-39:10, 72:5-8.  Caiman identified Infosys as a company that could provide global systems integration.  *See id.* at 76:24-78:7.  Infosys is a global consulting and IT services company with an international presence.  *See* DMSJ at 9.  Caiman (and Imam specifically) was familiar with Infosys from prior projects and information technology advisory boards.  *See* Imam at Dep. 94:10-19.

On June 24, 2016, Imam reached out to a previous contact at Infosys, and was put in touch with Nishad Somalwar, a Senior Sales Manager.  *See* Imam Dep. at 100:8-20; ECF No. 42-1, Ex. A ("Somalwar Dep.") at 45:4-6.  Imam and Somalwar spoke twice that day.  On the first phone call, Imam explained the services that Cavium needed, but did not disclose Cavium by name.  Imam Dep. at 99:3-16.  Imam stated that he could disclose more, but also "want to know if Infosys pays finder's fee."  Somalwar Dep. at 45:25-46:2.  Somalwar says that he responded, "I don't know," and that Imam asked him to check.  *Id.* at 46:6-25.  Imam says:

> [Somalwar's] response was, absolutely.  This is a new client to us. We're super excited about the opportunity, and if we win work, we'll, obviously, compensate you for it.

[1] Caiman was acquired by Sia Partners in October 2019, and the claims in this lawsuit were assigned to CC Lit Holding, the named plaintiff here. ECF No. 42-2 ¶¶ 2, 4.  The Court uses "Caiman" throughout.

Imam Dep. at 103:15-18.

Somalwar contacted his manager and asked about a finder's fee, but she also did not know if Infosys paid a finder's fee. Somalwar Dep. at 46:25-47:1, 47:10-15. Somalwar and Imam then held a follow-up phone call. *Id.* at 60:22-25. Imam again asked if Somalwar had found out if Infosys paid a finder's fee. *Id.* at 49:4-6. Somalwar said that "we do not know if Infosys pays finder's fee." *Id.* at 50:6-7. Somalwar states that he told Imam that he would "make sure that we will work in a collaborative manner to win the particular opportunity in whatever prospect you have," and to "let me know if you are [finally] comfortable." *Id.* at 50:11-14. The Parties dispute the circumstances that caused Imam to disclose Cavium's identity to Somalwar on that call. Somalwar claims that Imam disclosed Cavium's identity to him after Somalwar said that if he did not learn the client's identity, "we are not going to go ahead" because he wouldn't know if Cavium fit within the "industrial verticals and . . . classifications" that Infosys could effectively service. *Id.* at 50:15-21. Imam, in contrast, claims that he disclosed Cavium's identity to Somalwar only after Somalwar told him that "[Infosys] would compensate Caiman for . . . the introduction and helping them win the work." Imam Dep. at 106:22-25.[2]

Imam did ultimately disclose to Somalwar that the client was Cavium, gave him more details about the opportunity, and requested a slide deck from Infosys describing its capabilities. Somalwar Dep. at 51:7-16. In neither call did Somalwar expressly say that Infosys would pay a finder's fee. Imam Dep. at 106:19-23. Somalwar's notes from the call with Imam do not contain any reference to an agreement to pay a finder's fee to Caiman. *See* ECF No. 43-1, Ex. 5.

Imam then set up a meeting connecting Cavium and Infosys. Somalwar Dep. at 99:9-14. Caiman continued to facilitate discussions between Cavium and Infosys until Infosys was awarded an initial services contract with Cavium. *Id.* at 79:8-22. The limited scope of the first two statements of work allowed Cavium to assess the quality of work performed by Infosys. *Id.* Cavium and Infosys thereafter executed a third statement of work in November 2016. *Id.* Collectively, the statements of work were valued at over $5.2 million. *Id.*

---

[2] Plaintiff misquotes Somalwar as making an ultimatum to "tell [him] the prospect or this deal is dead." DMSJ Opp. at 1-2. No such quote appears in the cited deposition testimony.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Approximately one month before the third statement of work was executed, Iman met with

2    Somalwar, a director at Infosys, and a principal at Caiman for a lunch meeting to discuss the

3    Cavium project.  Imam told them that for some engagements Caiman facilitated, it received a 10 to

4    15 percent finder's fee.  Somalwar Dep. at 99:15-100:10.  Imam again asked Somalwar if Infosys

5    would pay a finder's fee.  Iman Dep. at 141:21-23.  Imam confirmed in his deposition that

6    Somalwar did not confirm that Infosys would do so.  *Id.* at 142:3-5.  The conversation did not

7    proceed to the specifics of any potential finder's fee, including how much and when the fee would

8    be paid.  *Id.* at 143:25-144:8.

9    A few months later, on March 30, 2017, Imam sent an email to Somalwar and others at

10   Infosys stating that he would "like to close the loop on [the] finders' fee for Cavium ASAP.

11   Would like to know when we get paid and whether it is 10% or 15% of revenue as we discussed

12   previously."  ECF No. 43-1, Ex. 7.  Somalwar called Imam and said that Infosys had never agreed

13   to pay a finder's fee.  Somalwar Dep. at 110:13-111:13.  Caiman never received a finder's fee

14   from Infosys.

15   Caiman filed this lawsuit in February 2017.  The operative complaint alleges claims for

16   breach of oral contract, quantum meruit, negligent misrepresentation, and fraud.  ECF No. 1 ¶¶ 29-

17   62.  Infosys answered in March 2018, *see* ECF No. 17, and these motions followed in September

18   2021.

19   **II.    LEGAL STANDARD**

20   "A party is entitled to summary judgment if the 'movant shows that there is no genuine

21   dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of*

22   *Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P.

23   56(a)).  A fact is "material" if it "might affect the outcome of the suit under the governing law,"

24   and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier

25   of fact to decide in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

26   248 (1986).

27   The party moving for summary judgment bears the initial burden of informing the Court of

28   the basis for the motion and identifying portions of the pleadings, depositions, answers to

1    interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material

2    fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet its burden, "the moving party

3    must either produce evidence negating an essential element of the nonmoving party's claim or

4    defense or show that the nonmoving party does not have enough evidence of an essential element

5    to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,

6    *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  In judging evidence at the summary judgment stage,

7    the Court "does not assess credibility or weigh the evidence, but simply determines whether there

8    is a genuine factual issue for trial."  *House v. Bell*, 547 U.S. 518, 559-60 (2006).  Where the

9    moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate

10   that no reasonable trier of fact could find other than for the moving party.  *Celotex*, 477 U.S. at

11   325; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

12          If the moving party meets its initial burden, the burden shifts to the nonmoving party to

13   produce evidence supporting its claims or defenses.  *Nissan Fire*, 210 F.3d at 1103.  If the

14   nonmoving party does not produce evidence to show a genuine issue of material fact, the moving

15   party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  "The court must view the

16   evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the

17   nonmovant's favor." *City of Pomona*, 750 F.3d at 1049.  "[T]he 'mere existence of a scintilla of

18   evidence in support of the [nonmovant's] position'" is insufficient to defeat a motion for summary

19   judgment.  *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513–14 (N.D. Cal.

20   1995) (quoting *Liberty Lobby*, 477 U.S. at 252).  "'Where the record taken as a whole could not

21   lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"

22   *First Pac. Networks*, 891 F. Supp. at 514 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*

23   *Corp.*, 475 U.S. 574, 587 (1986)).

24          Where the Parties file cross-motions for summary judgment, the court must consider each

25   motion "on its own merits." *Riverside Two*, 249 F.3d at 1136.  The court has an independent duty

26   to examine the record to determine if disputed issues of material fact exist, regardless of the

27   parties' assertions to the contrary.  *Id.*  This involves looking at evidence submitted in support of

28   all cross-motions in ruling on each cross-motion.  *Id.* at 1137.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.    INFOSYS'S MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION**

Infosys moves for summary judgment on all four claims in Caiman's Complaint.  The Court considers each claim in turn.

**A.    Breach of Oral Contract**

Infosys argues that it is entitled to summary judgment on the breach of oral contract claim because Somalwar, as a sale manager at Infosys, lacked authority to negotiate or enter into agreements on behalf of Infosys, and because Imam admits that Somalwar never expressly agreed to pay a finder's fee.  DMSJ at 16-18.  Caiman disputes Somalwar's purported lack of authority and points to Somalwar's testimony that Infosys would "compensate" Caiman if Infosys received the Cavium work.  DMSJ Opp. at 11-12.

"The elements of a breach of oral contract claim are the same as those for a breach of a written contract."  *Rhub Commc'ns, Inc. v. Karon*, 2018 WL 707596, at *2 (N.D. Cal. Feb. 5, 2018); Cal. Civ. Code §§ 1622, 1644.  Thus, plaintiff must show (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damages to the plaintiff.  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  Element 1 is dispositive.

There is no material dispute of fact that an oral contract did not exist between Caiman and Infosys.  "Where the parties have not agreed to all the essential terms, no binding contract exists." *Rachford v. Air Line Pilots Ass'n Int'l*, 375 F. Supp. 2d 908, 937 (N.D. Cal. June 15, 2005) (citing *Roth v. Garcia Marquez*, 942 F.2d 617, 627-28 (9th Cir. 1991)).  Here, it is undisputed that Caiman and Infosys never agreed on the essential terms of a contract.  The most explicit evidence in favor of finding an enforceable agreement is Somalwar's alleged statement that Infosys would "compensate" Caiman if it received the Cavium work.  Imam Dep. at 103:10-18, 106:23-25.  But there is no evidence that the parties had a meeting of the minds on any terms of a contract to "compensate" Caiman in the form of a finder's fee, which Imam himself admits.  *Id.* at 51:13-52:15 (agreeing that a finder's fee is "something that you would negotiate" and "solidify and formalize," but that Caiman never did so)  Most notably, the parties never agreed on the price of the contract.  Imam told Somalwar that Caiman had received finder's fees of 10 to 15 percent on

United States District Court
Northern District of California

1    other projects, Somalwar Dep. at 99:15-100:10, but never discussed the specific percentage that

2    Infosys would pay as a finder's fee, *id.* at 143:25-144:8.  And while a contract may be formed with

3    an open price term, the parties must have "otherwise manifested their mutual assent to the

4    agreement and the terms of that agreement [must be] sufficiently definite."  *San Joaquin Gen.*

5    *Hosp. v. United Healthcare Ins. Co.*, 2017 WL 1093835, at *2 (E.D. Cal. Mar. 22, 2017) (citing

6    *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1325 (9th Cir. 1982)).  There was no such

7    agreement here.  An agreement on a specific percentage of Infosys' eventual contract (still

8    hypothetical, at that point) may have been sufficient for a price term, but the parties never agreed

9    on a percentage, nor any other terms (such as the base "price" of which to take the percentage or

10   which statements of work should be subject to a finder's fee).

11          There is no dispute of material fact regarding whether an oral contract existed between the

12   parties.  The Court thus GRANTS Infosys's motion as to the breach of oral contract claim.

13          **B.      Quantum Meruit**

14          Infosys argues that it is entitled to summary judgment on Caiman's quantum meruit claim

15   because Caiman was the one that requested services from Infosys to fill a void in its integration

16   job for Cavium, and that any services performed were for Cavium's benefit.  DMSJ at 18-19.

17   Caiman argues that because Caiman referred Cavium to Infosys at Infosys' request, Caiman did

18   not intend to act gratuitously, and Caiman's services conferred a benefit on Infosys in the form of

19   the statements of work.  DMSJ Opp. at 8-10.

20          Quantum meruit "refers to the well-established principle that the law implies a promise to

21   pay for services performed under circumstances disclosing that they were not gratuitously

22   rendered."  *Huskinson & Brown v. Wolf*, 32 Cal. 4th 453, 458 (2004).  A contract need not actually

23   exist, but there must be circumstances indicating that "the services were rendered under some

24   understanding or expectation of both parties that compensation therefor was to be made."  *Port*

25   *Medical Wellness, Inc. v. Conn. Gen. Life Ins. Co.*, 24 Cal. App. 5th 153, 180 (2018) (citing

26   *Huskinson & Brown*, 32 Cal. 4th at 458).  The elements of a quantum meruit claim are "(1) that

27   the plaintiff performed certain services for the defendant, (2) their reasonable value, (3) that they

28   were rendered at defendant's request, and (4) that they are unpaid."  *Fudy Printing Co. v.*

1    *Aliphcom, Inc.*, 2019 WL 2180221, at \*4 (N.D. Cal. Mar. 7, 2019).[3]

2    The Court finds that disputed issues of material fact preclude summary judgment on this

3    claim.  There is no dispute that Infosys has never paid Caiman a finder's fee, but fact issues

4    remain as to the other elements of this claim.  On elements 1 and 3, the Parties dispute on whose

5    behalf Caiman performed services.  Caiman says it performed a service on behalf of Infosys when

6    it presented the Cavium opportunity to Infosys, while Infosys says that Caiman was performing

7    services for Cavium by finding another company to help with Cavium's integration of QLogic.

8    PMSJ at 8; PMSJ Opp. at 6-10.  There is evidence to support both of these theories.  Infosys was

9    unfamiliar with Cavium before Caiman connected the two companies, and Caiman served as a

10   point of contact between the two companies until the statements of work were executed.

11   Somalwar Dep. at 72:11-18; 75:5-8.  But Cavium also compensated Caiman nearly $700,000 for

12   its management of the QLogic integration, including for finding other companies like Infosys to

13   assist with the integration.  Imam Dep. at 186:15-20.[4]

14   More fundamentally, there is also a dispute over whether there was an "understanding" by

15   both parties that Caiman would be compensated.  *Port Medical Wellness*, 24 Cal. App. 5th at 180.

16   It is undisputed that neither Somalwar nor anyone else at Infosys ever explicitly told Imam that

17   Infosys would pay a finder's fee.  But Imam says that Somalwar told him that if Infosys received

18   the Cavium job, that Infosys would "compensate" Caiman for it.  Imam Dep. at 103:10-18,

19   106:23-25.  Somalwar also told Imam that they would work "in a collaborative manner" together

20   as Infosys sought the Cavium work and that he wanted to make Imam "comfortable" that he was

21   "going to work with [him]."  Somalwar Dep. at 51:1-2, 52:14-19.  This testimony is sufficient for

22   a reasonable trier of fact to find that the parties had an "understanding" that Caiman would be

23

24   _____

     [3] A plaintiff cannot recover on a quasi-contract claim, such as quantum meruit, if the parties "have
25   an enforceable agreement regarding a particular subject matter."  *Klein v. Chevron U.S.A., Inc.*,
     202 Cal. App. 4th 1342, 1388 (2012).  Because the Court grants summary judgment to Infosys on
26   the breach of oral contract claim, the quantum meruit claim is not foreclosed.

27   [4] For this reason, *Day v. Alta Bates Medical Center*, 98 Cal. App. 4th 243 (2002), does not help
     Defendant win summary judgment.  In *Day*, there was no evidence to support the theory that
28   plaintiff performed services for defendant.  *Id.* at 248.  Here, there is evidence that could lead a
     reasonable trier of fact to accept the theory that Caiman performed services on behalf of Infosys.

United States District Court
Northern District of California

8

1    compensated—in some form—for connecting Infosys with Cavium.

2           Infosys does not confront this testimony, except obliquely in its reply in support of its

3    motion.  There, Infosys argues that Imam's testimony is "uncorroborated and self-serving"

4    testimony that cannot alone allow Caiman to survive summary judgment on any of its claims.

5    DMSJ Reply at 12 (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)).  But

6    *Kennedy* and that line of cases do not go as far as Infosys suggests.  In *Kennedy*, the Ninth Circuit

7    affirmed a district court's grant of summary judgment in an ADA case.  Plaintiff had signed state

8    disability benefit and Social Security claims forms that stated that she was "completely disabled

9    for all work-related purposes," and submitted medical evidence supporting the same.  *Kennedy*, 90

10   F.3d at 1481.  She then testified in deposition that she was "*not* totally disabled."  *Id.*  The Ninth

11   Circuit agreed with the district court that the deposition testimony did not raise a *genuine* dispute

12   because the testimony "flatly contradicts both her prior sworn statements and the medical

13   evidence."  *Id.*; *see also Lansmont Corp. v. SPX Corp.*, 2012 WL 6096674, at \*4 (N.D. Cal. Dec.

14   7, 2012) (no genuine dispute of material fact created by testimony that responsive records were not

15   with company when later testimony and all other evidence showed that some responsive

16   documents were housed at company).  Here, however, Imam's testimony that Somalwar said that

17   he would be "compensated" is not necessarily "inconsistent" and "flatly contradict[ed]" by other

18   evidence.  *Kennedy*, 90 F.3d at 1481.  The parties may have never explicitly agreed to the terms of

19   a "finder's fee" while also reaching an "understanding" that Caiman would be "compensated" in

20   some way.  *Port Medical Wellness*, 24 Cal. App. 5th at 180.  To be sure, Infosys disputes Imam's

21   testimony and points to Somalwar's repeated statements that he told Imam that he didn't know

22   whether Infosys would pay a finder's fee.  But whether Imam's testimony about "compensation"

23   is credible given other evidence (or to what weight it is entitled) is a matter for the trier of fact to

24   determine at trial.[5]

25          Finally, Infosys argues that the Ninth Circuit's decision in *In re De Laurentiis*

26

27   _____

     [5] Because quantum meruit is an equitable claim, the finder of fact need not be bound by the
28   suggestion implicit in Imam's testimony that the "reasonable value" of Caiman's work for Infosys
     was ten or fifteen percent of the contracts Cavium awarded Infosys.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   *Entertainment Group, Inc.*, 963 F.2d 1269 (9th Cir. 1992), makes the quantum meruit claim fail as

2   a matter of law.  Not so.  In that case, an advertising agency purchased $1.6 million in advertising

3   from NBC on behalf of a third-party client.  NBC billed the agency pursuant to a contract to which

4   the client was not a party.  When the client entered bankruptcy, NBC sought to collect on a

5   quantum meruit theory the $1.6 million from CTI, the entity who purchased the assets of the client

6   in bankruptcy.  CTI argued that NBC could not recover because it expected payment from the

7   agency, not the client who was not a party to the contract.  The Ninth Circuit rejected that

8   argument, allowing NBC to assert a quantum meruit claim because the client received services

9   from NBC (advertising) for which NBC had not been paid and there was "no chance that [CTI]

10   will be forced to pay twice." *Id.* at 1272-74.  Infosys argues that this case is different because

11   Caiman received payment from Cavium and thus is not entitled to any additional payment from

12   Infosys.  DMSJ Reply at 9-10.  But the relationship in *De Laurentiis* was governed by a contract

13   which expressly stated the value of the services provided—$1.6 million.  Here, there was no oral

14   contract between the parties, and thus no exact value assigned to the services.  And unlike the risk

15   of double recovery under the contract in *De Laurentiis*, recovery by Caiman from Infosys would

16   not be "double" here.  At this point, the Court cannot say that a reasonable trier of fact could not

17   find that Infosys would not be entitled to payment from both Cavium (for managing the entire

18   integration operation) and Infosys (for presenting them with the opportunity to be a part of the

19   operation) under a quantum meruit theory, if the trier of fact found that Caiman was performing a

20   service on behalf of Infosys for which it was not paid.

21        Because disputes of material fact remain on this claim, summary judgment is

22   inappropriate.

23        **C.    Negligent Misrepresentation**

24        Infosys argues that Caiman's claim for negligent misrepresentation fails because there was

25   never a misrepresentation that Infosys would pay a finder's fee to Caiman.  DMSJ at 13-15.  At

26   the hearing, Caiman responded that summary judgment is inappropriate on this claim because,

27   among other reasons, Somalwar misrepresented that Infosys would "compensate" Caiman if

28   Infosys won the Cavium project.  DMSJ Opp. at 13-14.

10

1    The elements of a negligent misrepresentation claim are (1) the misrepresentation of a past

2    or existing material fact; (2) without reasonable ground for believing it to be true; (3) with intent

3    to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the

4    misrepresentation; and (5) resulting damage. *Najarian Holdings LLC v. Corevest Am. Fin. Lender*

5    *LLC*, 2020 WL 5993225, at *5 (N.D. Cal. Oct. 9, 2020) (citing *Apollo Cap. Fund, LLC v. Roth*

6    *Cap. Partners, LLC*, 158 Cal. App 4th 226, 243 (2007). Unlike in a fraud claim, defendant need

7    not have knowledge of falsity. *Apollo Cap. Fund*, 158 Cal. App. 4th at 243.

8    The Court finds that summary judgment is not appropriate on this claim. As with the

9    quantum meruit claim, there remains a dispute of material fact regarding how Somalwar

10   responded to Imam's question regarding a finder's fee. While Somalwar claims that he responded,

11   "I don't know," Imam says that Somalwar told him that if Cavium selected Infosys to assist with

12   the integration, that Infosys would "compensate" Caiman for it, even if there was no express

13   agreement to pay a "finder's fee." Imam Dep. at 103:10-18, 106:23-25. At summary judgment,

14   this raises a dispute of material fact about whether Somalwar made a misrepresentation that

15   Infosys would compensate Caiman. Defendant has not identified grounds for granting summary

16   judgment for lack of disputes of material fact regarding the other elements of a negligent

17   misrepresentation claim, so the Court does not analyze those elements. This claim will proceed.

18   ### D.    Fraud

19   Infosys argues it is entitled to summary judgment on Caiman's fraud claim for the same

20   reasons as it is on Caiman's negligent misrepresentation claim. The elements of fraud are the

21   same as for negligent misrepresentation, but knowledge of the falsity of the misrepresentation is

22   required instead of only negligent disregard for their truth. *Kearns v. Ford Motor Co.*, 567 F.3d

23   1120, 1126 (9th Cir. 2009); *Apollo Cap. Fund*, 158 Cal. App. 4th at 243. For the same reasons as

24   explained in the analysis of the negligent misrepresentation claim, there are disputes of material

25   fact that preclude summary judgment on this claim.

26   ### IV.    CAIMAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT

27   Caiman moves for summary judgment on only its quantum meruit claim. The Court

28   analyzed this claim in connection with Caiman's motion for partial summary judgment. *See supra*

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1    Section III.  As required, the Court has evaluated Caiman's motion for summary judgment on this

2    claim "on its own merits" and based on the evidence submitted in support of both motions.

3    *Riverside Two*, 249 F.3d at 1136.  For the same reasons as before, the Court finds that disputed

4    issues of material fact foreclose summary judgment on the quantum meruit claim.  There is a

5    dispute over whether the parties had an "understanding" that Caiman would be compensated in

6    some form for connecting Infosys with Cavium.  The Court accordingly DENIES Caiman's

7    motion.

8    **V.    ORDER**

9            For the foregoing reasons, IT IS HEREBY ORDERED that Caiman's Motion for Partial

10   Summary Judgment is DENIED.  Infosys's Motion for Summary Judgment or Summary

11   Adjudication is GRANTED as to breach of oral contract claim and DENIED in all other respects.

12   This order resolves ECF Nos. 42 and 43.

13

14   Dated:  October 29, 2021

15   _____

16   BETH LABSON FREEMAN
     United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

12